UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PURCELL BRONSON,          : CIVIL NO: 3:CV-05-02357
                          :
            Plaintiff     :
                          : (Judge Caputo)
      v.                  :
                          : (Magistrate Judge Smyser)
CO HOUDESHELL, et al.,    :
                          :
            Defendants    :


**REPORT AND RECOMMENDATION**

I. Background.


       On November 14, 2005, the plaintiff, a state prisoner
proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by
filing a complaint.  On November 14, 2005, the plaintiff also
filed *inter alia* an application to proceed *in forma pauperis.*


       By an Order dated November 23, 2005, the plaintiff's
application to proceed *in forma pauperis* was granted, and the
Clerk of Court was directed to serve the plaintiff's complaint
on the defendants.

On February 9, 2006, the plaintiff filed an amended complaint.

The amended complaint names as defendants: Jeffery Beard, the Secretary of the Pennsylvania Department of Corrections; Colleen Newfield, a physicians's assistant who works at the State Correctional Institution at Camp Hill (SCI-Camp Hill); and eighteen officials and employees at SCI-Camp Hill.  The plaintiff alleges that the defendants retaliated against him for his legal activities in numerous ways including not feeding him, threatening him, denying him yard time and interfering with his property.

On March 8, 2006, the defendants filed a motion to revoke the plaintiff's *in forma pauperis* status.  By an Order dated May 15, 2006, we granted the defendants' motion to revoke the plaintiff's *in forma pauperis* status, vacated the Order of November 23, 2005 granting the plaintiff's application to proceed *in forma pauperis,* and ordered the plaintiff to pay the full $250.00 filing fee.  The plaintiff eventually paid the filing fee.

2

In a Report and Recommendation dated September 11, 2006, we addressed a number of motions pending in this case at that time.  By an Order dated February 27, 2007, Judge Caputo adopted the Report and Recommendation and remanded the case to the undersigned for further proceeding.

There were numerous motions pending in this case when the case was remanded to the undersigned.  In this Report and Recommendation we address the following motions: 1) the plaintiff's August 11, 2006 motion (doc. 116) for a temporary restraining order and preliminary injunction; 2) the plaintiff's motion (doc. 135) for partial summary judgment; 3) defendant Newfield's motion (doc. 163) to dismiss the amended complaint; and 4) the corrections defendants' motion (doc. 197) for dismissal pursuant to 28 U.S.C. § 1915(e).

II. Plaintiff's August 11, 2006 Motion for a Temporary
Restraining Order or Preliminary Injunction.

On August 11, 2006, the plaintiff filed a motion for a TRO/preliminary injunction and a brief in support of that motion.

3

In order to obtain a preliminary injunction, the moving party must show: (1) a reasonable probability of success on the merits of the litigation and (2) that the movant will be irreparably injured pendente lite if relief is not granted. *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). "Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court 'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.'" *Acierno v. New Castle County*, 40 F.3d 645, 652 (3d Cir. 1994)(quoting *Delaware River Port Auth v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 920 (3d Cir. 1974)).  The determination of whether a preliminary injunction should be issued depends on a balancing of these factors. *Punnett, supra*, 621 F.2d at 582. Furthermore, when the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Id*.

The plaintiff is seeking a temporary restraining order and preliminary injunction enjoining defendants Southers and

Kelchner from destroying property seized from him on July 28, 2006 and requiring the return of that property.

On September 26, 2006, the corrections defendants filed a brief in opposition to the motion.  The corrections defendants assert that the documents at issue that were confiscated from the plaintiff were contraband because they related to several of the plaintiff's outside business ventures.  The defendants further assert that the plaintiff was given the opportunity to have the contraband items shipped out of the institution and that the plaintiff availed himself of that option and shipped the confiscated items out of the institution.  The defendants assert that the documents are no longer under the Department's custody or control.

On December 11, 2006, the plaintiff filed a reply brief in support of his motion.  The plaintiff disputes that the documents were contraband.  The plaintiff also disputes that all of the items were shipped out of the institution.

A response to the plaintiff's institutional request to have the documents shipped indicates that all of the documents were shipped out of the institution except documents that

belonged to other inmates.  *See Doc. 144, Exhibit 1-C.*   The
plaintiff disputes that all of the documents that were not
shipped belonged to other inmates.  Although he denies actively
engaging in a business, he indicates that some of the documents
which were not shipped were business forms.

Even assuming arguendo that some business forms that
were confiscated from the plaintiff were not shipped out of the
institution, the plaintiff has failed to establish that he
would be irreparably injured if preliminary injunctive relief
were not granted requiring the return of such business forms.
Accordingly, we will recommend that the plaintiff's August 11,
2006, motion for a TRO/preliminary injunction be denied.

III. Plaintiff's Motion for Partial Summary Judgment.

On September 21, 2006, the plaintiff filed a motion for
partial summary judgment and on October 6, 2006, the plaintiff
filed a statement of material facts and a brief in support of
his motion.  One of the plaintiff's claims is that he was
denied food in retaliation for his legal actions.  In his
motion for partial summary judgment, the plaintiff is seeking
summary judgment on claims relating to being placed on

styrofoam tray and container restriction for 83 days.  He
asserts that the size of his food portions were reduced due to
the size of the styrofoam trays and that he was not allowed to
receive food in containers.  The plaintiff asserts that during
the time in question he lost weight and that as a result of the
reduction in the amount of food he received he suffered hunger
pains, dizziness and headaches.

The corrections defendants have not filed a brief in
opposition to the plaintiff's motion for summary judgment.
Pursuant to Local Rule 7.6, the defendants are deemed not to
oppose the motion.  Even though the defendants are deemed not
to oppose the motion, we must determine whether the plaintiff
is entitled to judgment as a matter of law. *Anchorage
Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168,
175 (3d Cir. 1990) (even where motion for summary judgment is
unopposed court must determine if moving party is entitled to
judgment as a matter of law).

"'Summary judgment is proper if there is no genuine
issue of material fact and if, viewing the facts in the light
most favorable to the non-moving party, the moving party is
entitled to judgment as a matter of law.'" *The Circle School v.*

*Pappert*, 381 F.3d 172, 177 (3d Cir. 2004)(quoting *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 n.3 (3d Cir. 2000)).

The plaintiff has not presented evidence to support his food restriction claims.  Thus, the plaintiff has not established that he is entitled to judgment as a matter of law. Accordingly, the plaintiff is not entitled to summary judgment and it will be recommended that the plaintiff's motion for partial summary judgment be denied.

IV.  Defendant Newfield's Motion to Dismiss.

On October 13, 2006, defendant Newfield filed a motion (doc. 163) to dismiss the amended complaint and a brief in support of that motion.

The plaintiff has not filed a brief in opposition to defendant Newfield's motion to dismiss. Pursuant to Local Rule 7.6, the plaintiff is deemed not to oppose the motion.  Even though the plaintiff is deemed not to oppose the motion, the court can not grant a motion to dismiss as unopposed based only on a local rule requiring a brief in opposition without any

8

analysis of whether the complaint fails to state a claim upon which relief can be granted. *Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3d Cir. 1991).  We conclude that the amended complaint does not fail to state a claim upon which relief can be granted against defendant Newfield.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In connection with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the burden is on the moving party to show that there is no actionable claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When deciding a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff. *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id*. at 449-50.  A complaint should not be dismissed for failure to state a claim upon which relief

can be granted unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim
which would entitle him to relief. *Conley v. Gibson*, 355 U.S.
41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d
Cir. 1988).  Furthermore, *pro se* civil rights complaints are to
be construed liberally. *Haines v. Kerner*, 404 U.S. 519 (1972).

The plaintiff alleges in his amended complaint that he
was deprived of food on many occasions and that as a result he
lost a lot of weight, suffered hunger pain, dizzy spells,
weakness, digestive problems and mental and emotional stress.
The plaintiff alleges that he requested a high protein diet
from defendant Newfield and that she denied him such a diet
even though she knew he was suffering and had lost a
substantial amount of weight.  He alleges that defendant
Newfield acted with deliberate indifference.  He alleges that
she condoned the guard's acts of food deprivation and that she
knew that the plaintiff had lost more than 10% of his body
weight.  The plaintiff alleges that medical intervention was
justified and could have been provided by defendant Newfield.

In order for the plaintiff to state a viable Eighth
Amendment medical claim he must allege that the defendant acted

with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

Defendant Newfield argues that the plaintiff has failed to allege that he had a serious medical need.

The concept of serious medical need has two components, one relating to the consequences of a failure to treat and the other relating to the obviousness of those consequences. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). The condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. *Id.* Also, the condition must be one that has been diagnosed by a doctor as requiring treatment or one that is so obvious that a lay person would easily recognize the need for a doctor's attention. *Id.*

As indicated above, the plaintiff alleges in his amended complaint that he was deprived of food on many occasions and that as a result he lost a lot of weight, suffered hunger pain, dizzy spells, weakness, digestive problems and mental and emotional stress. Accepting the plaintiff's allegations as true and drawing all reasonable

inferences in the light most favorable to the plaintiff, as we must when deciding a motion to dismiss, we can not say as a matter of law that the plaintiff has failed to allege a serious medical need.

Defendant Newfield argues that the amended complaint fails to state an Eighth Amendment claim against her because the plaintiff has not alleged that she knew that her conduct presented a substantial risk of causing him serious harm.

Deliberate indifference requires that a prison official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

As indicated above, the plaintiff alleges that he requested a high protein diet from defendant Newfield and that she denied him such a diet even though she knew he was suffering and had lost a substantial amount of weight.  He alleges that defendant Newfield acted with deliberate indifference.  He alleges that she condoned the guard's acts of food deprivation and she knew that the plaintiff had lost more than 10% of his body weight.  The plaintiff alleges that

medical intervention was justified and could have been provided by defendant Newfield.

Federal Rule of Civil Procedure 8(a)(2) requires no more than that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Complaints 'need not plead law or match facts to every element of a legal theory.'" *Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001)(quoting *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir. 2000)). "[A] plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery." *Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113, 124 (3d Cir. 1998). The statement required by Rule 8(a)(2) "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* The notice pleading standard applies to 42 U.S.C. § 1983 cases. *Alston v. Parker*,

363 F.3d 229, 233 (3d Cir. 2004)(holding that civil rights complaints are not required to meet a heightened pleading standard but are subject to the liberal standards of notice pleading).

Accepting the plaintiff's allegations as true, we conclude that the plaintiff has alleged deliberate indifference on the part of defendant Newfield to a serious medical need of the plaintiff.  Accordingly, we will recommend that defendant Newfield's motion to dismiss the amended complaint be denied.

V. Corrections Defendants' Motion to Dismiss.

On December 7, 2006, the corrections defendants filed a motion for dismissal pursuant to 28 U.S.C. § 1915(e) on the basis that the plaintiff's allegation of poverty in his *in forma pauperis* application was false.  On December 13, 2006, the corrections defendants filed a brief in support of that motion.  The plaintiff has not filed a brief in opposition to the motion.  Pursuant to Local Rule 7.6, the plaintiff is deemed not to oppose the motion.  Nevertheless, we consider the motion to determine if dismissal is appropriate.

14

The corrections defendants contend that the plaintiff's allegation of poverty in his application to proceed *in forma pauperis* in this case was untrue and that, therefore, this case should be dismissed.

In this case, the court has already revoked the plaintiff's *in forma pauperis* status and the plaintiff has paid the filing fee.  Since the *in forma pauperis* issue has already been dealt with in this case, at first blush it does not seem that dismissal at this point on the basis of an untrue allegation of poverty in the plaintiff's *in forma pauperis* application would be appropriate.  However, the corrections defendants contend that the case should be dismissed pursuant to 28 U.S.C. § 1915(e).

28 U.S.C. § 1915(e) provides, in pertinent part, that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . .  the allegation of poverty is untrue."

The clear language of § 1915(e) mandates dismissal if the court determines that the plaintiff's allegation of poverty

15

is untrue.  When the court determines that the allegation of poverty is untrue, dismissal is mandated even if the filing fee has been paid in full. *See Ralston v. Aftherton,* No. 3:CV-01-0609, slip order at 5 (M.D.Pa. Jan. 15, 2004)(dismissing case based on false allegation of poverty even though the filing fee had been paid in full).  Accordingly, in this case we must determine whether the plaintiff's allegation of poverty was untrue.

The plaintiff filed his application to proceed *in forma pauperis* in this case on November 14, 2005.  In response to the question on the *in forma pauperis* application which asks "Do you own any cash or other property; have a bank account; or receive money from any source?" the plaintiff checked the box indicating "no."  The corrections defendants contend that at the time that the plaintiff filed his application to proceed *in forma pauperis* he had $1500.00 at his disposal which he did not disclose in his *in forma pauperis* application.

The corrections defendants contend that the $1500.00 at the plaintiff's disposal was from a settlement in a civil action brought by the plaintiff.  The corrections defendants set forth the following chronology regarding that settlement:

16

Several months prior to the time that Plaintiff filed his IFP application, Plaintiff accepted an offer to settle a civil action in Allegheny County for $1,500.00.  On May 6, 2005, Plaintiff directed a settlement demand to Jeanette Ho, Esq., counsel for the defendants in *Bronson v. Lightfoot,* No. 97-8798 (All. Cty.).  In his letter, Bronson offered to settle the action in exchange for $1,500.00 and a promise to house Bronson in general population at any time that he was confined at the Allegheny County jail.

On August 8, 2005, Attorney Ho responded to Bronson's settlment demand.  In her responding letter, Ms. Ho indicated that she was authorized to settle *Bronson v. Lightfoot* for $1,500.00, but could not authorize Bronson's confinement in general population at the Allegheny County jail. Ms. Ho requested that Bronson indicate whether he would accept her counter-offer within 14 days.

On August 16, 2005, Bronson accepted Ms. Ho's settlement offer.  In his letter, Bronson stated:

Receipt is acknowledge [sic] of your letter of August 8, 2005.  Be advised that I accept you represented defendants' settlement offer of $1,500.  Please cut the check in the name of Patricia Walker, and mail it to: Elizabeth Bronson, 515 Anderson St., Greenville, SC 29601.

On August 22, 2005, Ms. Ho acknowledged receipt of Mr. Bronson's August 16, 2005 letter and indicated that she would be forwarding a Full and Final Release to Mr. Bronson for his signature.  Ms. Ho subsequently sent a Full and Final Release to Mr. Bronson on August 31, 2005, along with a request that Mr. Bronson provide the social security numbers for Elizabeth Bronson and himself so that the settlement check could be issued.

17

Shortly thereafter, Mr. Bronson executed the release, but requested that the settlement check be directed to a different address.  On September 22, 2005, Ms. Ho acknowledged receipt of the release and of Mr. Bronson's revised instruction regarding the issuance of the settlement check.  Ms. Ho noted that Mr. Bronson failed to provide his social security number and again requested that he provide it so that the settlement check could be issued. Mr. Bronson provided that information on September 28, 2005.

Thereafter, Bronson continued to forestall issuance of the settlement check.  In a letter dated March 5, 2005, Bronson wrote to Ms. Ho, requesting that she stop payment on the settlement check.  In a letter dated October 11, 2005, Ms. Ho acknowledged receipt of Mr. Bronson's letter and noted that the actual date of the letter appeared to have been October 5, 2005, rather than March 5, 2005.  Ms. Ho advised Bronson that the settlement check had not been sent yet, but that she would inform him when it was.

On October 13, 2005, Mr. Bronson wrote to Ms. Ho, again revising his information for issuance of the check.  Bronson requested that, if the check had been issued pursuant to his previous directions, Ms. Ho stop payment on the check and reissue the check.  The new check was to be made payable to Erica Kreisman, Esq..

On October 16, 2005, Plaintiff prepared and signed his IFP application in this action. In his IFP application, which Plaintiff filed with this Court on November 14, 2005, Plaintiff alleged that the did not own any cash or other property, did not have a bank account, and was not receiving money from any source.

On October 18, 2005, Ms. Ho directed a letter to Purcell Bronson acknowledging receipt of his October 13, 2005 letter.  Ms. Ho

18

requested that Bronson sign an amended release
indicating that the settlement check was to be
made payable to a different person.  This
arrangement failed, too, however, when Ms.
Kreisman refused to be the payee on the
settlement check and indicated that "she [did]
not want to handle [Bronson's] money."

Bronson again revised his instructions for
issuance of the check on November 14, 2005,
requesting that the settlement check be issued
to Dwelling House Savings & Loan.  Bronson
filed his complaint and his IFP application in
this matter the following day.  Ms Ho wrote to
Bronson on November 29, 2005 informing him that
she had contacted Dwelling House Savings & Loan
regarding issuance of the settlement check and
learned that Dwelling House did not have an
account for Bronson.  Ms. Ho also stated that
the individual with who she had spoken at
Dwelling House had informed her that "the State
Correctional Institution at Camp Hill may not
allow a check to be sent out of the
institution."  Ms. Ho informed Mr. Bronson that
the check would need to be endorsed by him
before being deposited with Dwelling House, and
advised that Bronson contact staff at SCI-Camp
Hill to ensure that the check would not be
seized when it was sent to him for endorsement.
Ms. Ho again advised Mr. Bronson of this, and
advised Bronson to consult staff at SCI-Camp
Hill about his check in letters dated December
8, 2005 and February 6, 2006.

On February 8, 2006, Bronson wrote back to
Ms. Ho, again revising his instructions for
issuance of the settlement check.  Without
addressing Ms. Ho's concern over sending the
check into the prison, Bronson simply requested
that the check be issued to his sister.
Bronson stated that he would provide an address
for his sister shortly.  However, this never
happened.

On March 15, 2006, Bronson again wrote to
Ms. Ho, providing an address for Joe Heckel, an
individual working with the Pennsylvania Prison
Society.  Bronson then wrote to Joe Heckel on
March 23, 2006, requesting that Mr. Heckel
receive the check and forward it to Teri
Himebaugh, Esq..  Bronson stated that, with the
$1,500.00, he planned to start up his new
business, United Resources.  Bronson developed
his business, United Resources, in an attempt
to collect inmate funds in pooled accounts
outside the prison system for use by inmates,
independent of the deductions and controls of
the correctional and court systems.

On April 5, 2006, Ms. Ho directed a check
for $1,500.00, made payable to Purcell Bronson,
to Joe Heckel. Mr. Heckel acknowledged receipt
of this check on April 14, 2006.

This, however, was not the end of the
saga.  At Bronson's request, Mr. Heckel
directed the settlement check to Teri
Himebaugh, Esq. on April 24, 2006.  Ms.
Himebaugh rejected the settlement check and
returned it to Mr. Heckel.  The check, which by
this time was being referred to by Mr. Heckel
and the "hot potato", was then directed to a
different person, Sabrina Reutter.  Ms. Reutter
is an individual doing business in Saline,
Michigan as Quality Typing Service.

Bronson ultimately deposited the $1,500.00
into an outside account through Quality Typing
Service ("QTS") in Saline, Michigan.  He then
used the money for costs associated with
various activities, including the preparation
and mailing of documents associated with
Plaintiff's business, Nasir Enterprises, as
well as other personal endeavors, including
activities on the internet, and development of
his business, United Resources.  At no time did
Plaintiff inform the Court or counsel for the
Defendants in this action of his receipt of
funds, or of any inaccuracies in his IFP

20

> application.  Only after Bronson's IFP status
> was revoked in this action did Bronson use a
> portion of the funds from his settlement check
> to pay the filing fee in this action.  Even
> then, however, Bronson failed to inform the
> Court of the source of his funds.

*Doc. 203 at 3-9 (citations to the record omitted).*


The plaintiff has not filed a brief in opposition to the corrections defendants' motion to dismiss disputing the chronology of events surrounding the $1500.00.  Thus, we accept the defendants' chronology of events as true.  That chronology indicates that, although the $1500.00 check was not issued until after the plaintiff filed his application to proceed *in forma pauperis* in this case, the plaintiff had control over the $1500.00 at the time that he filed his application to proceed *in forma pauperis.*  The plaintiff could have had the $1500.00 sent to him in prison before the date that the he filed his *in forma pauperis* application in this case.  Given that the plaintiff had the $1500.00 at his disposal at the time that he filed his *in forma pauperis* application, we conclude that the plaintiff's allegation of poverty in his *in forma pauperis* application was untrue.  Accordingly, we recommend that the case be dismissed pursuant to 28 U.S.C. § 1915(e).

The question remains whether the dismissal should be with prejudice or without prejudice.  The corrections defendants request that the dismissal be with prejudice. Whether the dismissal should be with or without prejudice is within the discretion of the district court. See *Harris v. Cuyler*, 664 F.2d 388, (3d Cir. 1981)(holding that under 28 U.S.C. § 1915(d), the predecessor of § 1915(e), the district court has discretion to determine the nature of the dismissal for a false allegation of poverty).

As indicated above, the plaintiff could have had the $1500.00 sent to him in prison before the date that he filed his *in forma pauperis* application in this case.  It appears, however, that the reason that the plaintiff did not take immediate possession of the $1500.00 was that he was attempting to hide his assets.  It appears that he was attempting to hide his assets from prison officials and the court.  The plaintiff has not provided any other explanation for his failure to disclose the $1500.00 to the court.  We conclude that not only was the plaintiff's allegation of poverty untrue but that the plaintiff was acting in bad faith by failing to disclose the $1500.00.  Given the plaintiff's bad faith, we recommend that the case be dismissed with prejudice.

22

VI. Recommendations.


Based on the foregoing, it is recommended that the plaintiff's August 11, 2006 motion (doc. 116) for a TRO/preliminary injunction be denied, that the plaintiff's motion (doc. 135) for partial summary judgment be denied, that the motion (doc. 163) to dismiss filed by defendant Newfield be denied, and that the corrections defendants' motion (doc. 197) to dismiss pursuant to 28 U.S.C. § 1915(e) be granted and that the case be dismissed with prejudice.[1]


                                        **/s/ J. Andrew Smyser**
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  March 13, 2007.

---

1.  We note that on March 12, 2007, the corrections defendants filed a motion to stay the proceedings in this case pending the disposition of their motion to dismiss pursuant to 28 U.S.C. § 1915(e).  The motion to stay has not been addressed by the undersigned because the motion has not yet been briefed. Moreover, since the motion (doc. 224) for a temporary restraining order and preliminary injunction filed by the plaintiff on February 20, 2007 is before Judge Caputo, granting a stay in this case may be beyond the authority of this magistrate judge at this time.